```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**DAVID MCGRAW**

    **Plaintiff**

**v.**                                        **Civil Action No.: 2:05-0215**

**DISCOVER FINANCIAL SERVICES, INC.**

    **Defendant**


<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court is the motion of plaintiff David McGraw, filed April 12, 2005, seeking remand of this matter to the Circuit Court of Kanawha County, West Virginia, on the grounds that the amount in controversy for diversity jurisdiction has not been met.

I.

According to the allegations of his complaint, plaintiff David McGraw, a full-time student at West Virginia University, was solicited by a telemarketer in July 2002 to apply for a Discover credit card.  Am. Compl. at ¶¶ 5-6.  McGraw applied and obtained a credit card with a $1000 limit issued by the defendant Discover Financial Services, Inc. ("Discover").  <u>Id.</u> at ¶ 6.

Having obtained his Discover card, McGraw, in the first billing cycle, used the card to pay a tuition bill in the amount of $855.  He also sought a cash advance of $100 and was charged a $5 fee for that advance.  Id. at ¶ 7.  It appears that the validity of this fee is not disputed.

McGraw received his first billing statement, apparently in August 2002.  In addition to the charges listed above, McGraw was charged $45 for a product titled "the Register Card Svce."[1]  Id. at ¶ 8.  McGraw, however, did not agree to purchase this product.  Because this charge was imposed, the total balance on his account exceeded the $1,000 limit by $5 and an additional $35 "overlimit fee" was assessed.  Id. at ¶ 11.

McGraw contacted a representative of Discover to dispute the charge, requesting Discover provide proof that he had purchased the product.  Id. at ¶ 12.  He was informed by the representative that Discover would investigate further but that its records, presumably computer records, reflected that McGraw had purchased the product.  Id. at ¶ 13.  McGraw continued paying on the account until December 2002.

---

[1] No further details have been given about the nature of this product.

In August 2003, McGraw was contacted by the West Virginia law firm of Martin & Seibert, L.C., which was attempting to collect the debt owed on his account that was then represented to be over $1,800.  Id. at ¶ 17.  Because McGraw had no phone service, Martin & Seibert was granted authorization to speak with McGraw's mother about the debt.  Id.  She requested proof that her son had purchased the product in dispute and Martin & Seibert did not provide any such proof.  Id. at ¶ 18.

Martin & Seibert presumably failed to collect the debt and McGraw's account was turned over to Weltman, Weinberg & Reis Co., LPA, ("Weltman"), an Ohio law firm.  Weltman contacted McGraw.  After McGraw again requested to be provided with proof that he purchased the product, Weltman sent him a bill for $1,999.34.

A representative of Weltman contacted McGraw's mother on July 24, 2004, and purportedly misrepresented that proof had been provided.  That representative proposed that McGraw's account be settled for $800 to be paid in two postdated checks.  McGraw agreed and authorized the checks only to be informed that more money was required.  McGraw responded by canceling his checks.

Thereafter, McGraw filed a pro se action in the Magistrate Court of Fayette County, West Virginia, contesting Discover's and Weltman's conduct.  The pro se action was removed by the defendants to this court on federal question jurisdiction and McGraw, having hired an attorney, moved to voluntarily dismiss his complaint.  The action was dismissed on October 27, 2004.  David McGraw v. Discover Financial Services, Inc., and Weltman, Weinberg & Reis Co., LPA; Civil Action No. 2:04-cv-0987.

On October 28, 2004, McGraw commenced a civil action against Discover and Weltman in the Circuit Court of Kanawha County, West Virginia.  An amended complaint was filed on December 3, 2004.  Count I alleges that the defendants breached the duty of good faith and fair dealing by seeking payment of amounts not owed, refusing to provide proof that the product was purchased and harassing McGraw in an effort to collect a phantom debt.  Count II contends that the defendants violated Section 46A-2-127(d) of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101, et seq. ("WVCCPA"), by misrepresenting the amount of debt owed.  Count III asserts that the defendants violated § 46A-6-104 of the WVCCPA by failing both to investigate properly the disputed product and to provide promptly proof that McGraw purchased that product.  Count IV

claims that Discover defrauded McGraw by misrepresenting the amount due on the account and by charging McGraw for an item that he did not purchase. Count V contends that Discover defamed McGraw by inaccurately reporting his account history to at least one credit reporting agency thereby damaging his credit rating. Count VI alleges that the defendants invaded McGraw's privacy.

McGraw seeks actual damages, punitive damages and attorney fees with respect to each count.[2] With respect to Counts II and III pertaining to violations of the WVCCPA, he also seeks the imposition of a $3,700 civil penalty pursuant to § 46A-5-101 and 46A-5-106 for each of an unspecified number of violations of the WVCCPA. Although there is no sum certain mentioned in the complaint, paragraph 30 states "[t]he amount in controversy in this action is less than $75,000, exclusive of interest and costs." Id. at ¶ 30.

On March 11, 2005, Discover removed the action to this court, contending that it and McGraw are completely diverse and

---

[2]Puntitive damages, however, are not available under the provisions of the WVCCPA relied upon in part by McGraw. One Valley Bank of Oak Hill, Inc. v. Bolen, 425 S.E.2d 829 (W. Va. 1992).

the amount in controversy exceeds $75,000.[3]  Discover asserts that McGraw is seeking in excess of $75,000 as evidenced by his requests for the imposition of multiple civil penalties of $3,700, compensatory damages, punitive damages and attorney fees.  Discover notes that in Bostic v. American Gen. Fin., Inc., 87 F. Supp. 2d 611 (S.D. W. Va. 2000), the consumer plaintiffs were awarded approximately $72,500 in attorney fees alone.  Discover further states that paragraph 30 is not dispositive of the amount in controversy inasmuch as that paragraph does not contemplate a binding stipulation as outlined in McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481 (S.D. W. Va. 2001).

     McGraw seeks remand contending that McCoy is distinguishable inasmuch as his stated limitation on damages was pled as a factual allegation and not as simply part of the ad damnum clause.  He also asserts that Discover has not shown that the amount in controversy exceeds $75,000.  In his reply, he further argues that, pursuant to the rationale in Saval v. BL LTD, 710 F.2d 1027, 1032-34 (4th Cir. 1983), attorney fees should not be considered.

---

[3]Although Weltman is also diverse, Discover's notice of removal indicates that McGraw and Weltman had settled their portion of the dispute prior to the removal.  By agreed order entered March 29, 2005, Weltman was dismissed as a party.

II.

Subject to limited exceptions, a defendant may transfer a case from state court to federal court if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C.A. § 1441(a). Removal statutes must be construed in light of the federalism concerns that animate the policy of strictly confining federal jurisdiction within the congressionally-set limits. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). "The policy of the statute calls for its strict construction." Healy v. Ratta, 292 U.S. 263, 270 (1934). A case must be remanded if federal jurisdiction is doubtful. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

Federal district courts have original jurisdiction of actions between citizens of different states in which the "matter in controversy" exceeds $75,000, exclusive of interest and costs. 28 U.S.C.A. § 1332(a). A defendant who removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996); Gaus v.

**Miles, Inc.**, 980 F.2d 564, 567 (9th Cir. 1992); **Landmark Corp. v. Apogee Coal Co.**, 945 F. Supp. 932, 935 (S.D. W. Va. 1996). If not specified in the complaint, the amount in controversy must be determined on the likely monetary relief that may be granted to a plaintiff if he succeeds on all of his claims asserted in good faith. **Landmark Corp.**, 945 F. Supp. at 936-37. Indeed, "the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." **Sayre v. Potts**, 32 F. Supp.2d 881, 886 (S.D. W. Va. 1999) (**citing Landmark Corp.**, 945 F. Supp. at 936-37). In calculating that amount, the court may consider the "'entire record before it and make an independent evaluation'" of whether the amount in controversy is satisfied. **Sayre**, 32 F. Supp.2d at 886 (**citing White v. J.C. Penney Life Ins. Co.**, 861 F. Supp. 25, 27 (S.D. W.Va. 1994) (citation omitted)).

III.

A. **Compensatory Damages.**

In his motion for remand, McGraw contends that his actual economic damages are approximately $1,000. This figure appears principally derived from the aggregation of penalties and

8

late fees charged by Discover against his account.  This figure appears high inasmuch as the allegations of the complaint indicate that McGraw did incur $960 of valid debt as stated presumably in his August 2002 billing statement and it appears that he had not tendered payment in full of this debt when he stopped paying on his account in December 2002.  It thus is not readily discernable to what extent any disputed amount was ever collected from McGraw or whether all of the charges stated were illegal inasmuch as the lion's share of the initial debt was validly owed to Discover and there is no allegation that the undisputed portion of the debt was ever paid.  In all likelihood, McGraw's actual damages are well less than $1,000.

Although not discussed by the parties, McGraw does indicate that the actions of Discover impaired his credit rating.  The complaint, however, is silent as to whether McGraw was denied an extension of credit or received an extension of credit on less favorable terms as a result of any reporting by Discover pertaining to his account.  Discover has not produced any evidence indicating the extent to which, if any, McGraw has been harmed as the result of any inaccurate reporting.  The $1,000 figure, which Discover does not challenge, is the only amount for compensatory damages before the court.

B.  <u>Statutory Penalties.</u>

In Count II of the complaint, McGraw alleges that the defendants violated § 46A-2-127(d) which provides in full that:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers.  Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> (d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding.

W. Va. Code § 46A-2-127(d).  A claim is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes."  W. Va. Code § 46A-2-122(b).  The term "service" includes "privileges with respect to . . . education."  W. Va. Code § 46A-1-102(47).  A debt collector is "any person engaging directly or indirectly in debt collection" and the West Virginia Supreme Court of Appeals has held that the phrase "debt collector" should be construed to extend to creditors collecting their own debts.  Syl. Pt. #3, <u>Thomas v. Firestone Tire & Rubber Co.</u>, 266 S.E.2d 905 (W. Va. 1980); W. Va. Code § 46A-2-122(d).

10

The remedial provisions for a violation of § 46A-2-127(d) are found in §§ 46A-5-101, et seq.  Section 46A-5-101, insofar as possibly pertinent here, provides that:

> If a creditor has violated the provisions of this chapter applying to collection of excess charges... illegal, fraudulent or unconscionable conduct, [or] any prohibited debt collection practice, ... the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.

W. Va. Code § 46A-5-101.  There is authority that each violation of § 46A-5-101 creates a single cause for recovery of a single penalty.  Strum v. Providian Nat'l Bank, 242 B.R. 599, 603 (S.D. W. Va. 1999) (finding that the 13 separately alleged violations of the debt collection provisions of the WVCCPA may be aggregated for purposes of determining the amount in controversy).  Moreover, a civil penalty imposed by the court may, in the court's discretion, be adjusted for inflation since September 1, 1974, in an amount equal to the consumer price index.  W. Va. Code § 46A-5-106.  Here, McGraw seeks the imposition of civil penalties in the amount of $3,700 for each violation.[4]

---

[4] Presumably, $3,700 is the maximum civil penalty available under § 46A-5-101, meaning that the discretionary increase for inflation would allow the court to impose a civil penalty between $370 and $3,700.

11

Discover contends that McGraw seeks the imposition of more than one civil penalty and it appears that there is support for this contention.[5]  The complaint arguably identifies six separate communications in which McGraw maintains representatives or agents of Discover attempted to collect the debt through false representations.  While Discover suggests that McGraw may be seeking the imposition of penalties for even more violations, Discover makes no effort to identify the number of violations or even to suggest a dollar amount to attach to the action.  At best, it appears that McGraw is seeking the imposition of six separate civil penalties which, if adjusted for inflation, would entitle him to penalties between $2,220 and $22,200.

C.  <u>Punitive Damages.</u>

In addition to compensatory and statutory damages, punitive damages may be included for the purpose of determining

---

[5]McGraw appears to contend that Discover's debt collection practices also violated §§ 46A-6-101, <u>et</u> <u>seq.</u>, of the WVCCPA.  That article principally governs unfair and deceptive practices in connection with the sale of goods and services to consumers.  W. Va. Code § 46A-6-102.  The cause of action authorized under the article allows a consumer to recover actual damages or $200, whichever is greater, but does not otherwise expressly authorize the imposition of a civil penalty similar to § 46A-5-101.  W. Va. Code § 46A-6-106.  Inasmuch as the article focuses on the sale of goods and service and inasmuch further as McGraw does not contend he purchased goods or services, this claim does not appear valid.

the amount in controversy.  14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702 (3d ed. 1998) ("A long line of decisions clearly establishes the proposition that exemplary or punitive damages, when they are permitted to be awarded under the governing substantive law for the claim being asserted by the plaintiff, can be included in determining whether the jurisdictional amount in controversy requirement has been met.").  Of course, "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined."  Saval v. BL Ltd., 710 F.2d 1027, 1033 (4th Cir. 1981).  The issue of whether a plaintiff has pled in good faith a claim for punitive damages is dependent upon his state causes of action.[6]  14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702 (3d ed. 1998).  In determining the amount of punitive damages, it is noted that, in the recent case of State Farm Mutual Automobile Insurance Co. v. Campbell, 538 S.Ct. 408 (2003), the United States Supreme Court examined the relationship of punitive damages to compensatory damages and suggested in dicta that single digit ratios are presumptively valid.  Id. at 1524.

---

[6]There is no dispute that McGraw's fraud claim may sustain an award of punitive damages under West Virginia law.  Muzelak v. King Chevrolet, Inc., 368 S.E.2d 710, 714 (W. Va. 1988).

McGraw concedes that punitive damages are part of the calculus. He, however, notes that even a 10 to 1 ratio of punitive damages to compensatory damages only results in a punitive damages award of $10,000. Discover has made no response to the figure and the court accepts $10,000 as a maximum reasonable amount for punitive damages in this action.

D. **Attorney Fees.**

28 U.S.C. § 1332(a) provides, in relevant part, that:

> The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> (1) citizens of different states.

28 U.S.C. § 1332(a). It is accepted under 28 U.S.C. § 1332(a) that when a right to attorney fees is provided by contract or state statute, the court may consider attorney fees as part of the amount in controversy. See Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001); see also Manguno v. Prudential Property & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) ("[i]f a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[w]e hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language,

14

such fees may be included in the amount in controversy."); cf. Saval v. BL Ltd., 710 F.2d 1027, 1033 (4th Cir. 1983) (recognizing that courts have considered attorney fees as part of the jurisdictional amount where statutes or contractual provisions transform the fees into substantive rights to which litigants are entitled).  West Virginia Code § 46A-5-104 provides that:

> In any claim brought under this chapter applying to ... any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer.

Id.

McGraw contends that Saval stands for the proposition that, where a statute defines attorney fees as recoverable costs, an award of such fees is not an appropriate consideration for the amount in controversy threshold set forth in 28 U.S.C. § 1332(a) which expressly excludes "costs and interests."  Inasmuch as § 46A-5-104 refers to attorneys fees as "costs of litigation," he states that those fees should not be part of the amount in controversy calculus.

The court disagrees.  Saval concerns the scope of a Congressional grant of specific jurisdiction to Article III

courts over federally created Magnuson Moss claims.[7]  710 F.2d at 1032-33.  <u>Saval</u> does not purport to interpret 28 U.S.C. § 1332(a).  Indeed, the Fourth Circuit in <u>Saval</u> noted that the term "costs" as used in 28 U.S.C. § 1332(a) does not include "state statutes or contractual provisions [transforming] attorney fees into substantive rights to which litigants [are] entitled."  <u>Id.</u> at 1033.  Inasmuch as the court's jurisdiction in this action turns on the Congressional grant of jurisdiction set forth in 28 U.S.C. § 1332(a), it makes no difference whether the state legislature characterizes the right to an award of attorney fees as a right to costs.[8]  Because the term "costs" in 28 U.S.C. § 1332(a) has been interpreted not to include attorney fees awarded

---

[7] In <u>Saval</u>, the Fourth Circuit addressed whether a statutory fee shifting mechanism was properly included in the calculation of the amount in controversy for a Magnuson-Moss Act claim, 15 U.S.C. § 2310.  Noting that the attorney fees for purposes of that Act were identified by Congress as an example of "costs and expenses", the court concluded that attorney fees on a Magnuson-Moss claim are a cost because that construction is "most consistent with the provision's restrictive nature."  710 F.2d at 1032.

[8] The court also notes that McGraw has sought attorney fees as part of his fraud claim.  It is well established in West Virginia that a plaintiff proving a fraud claim may be awarded his attorney fees.  Syl. Pt. 4, <u>Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.</u>, 425 S.E.2d 144 (W. Va. 1992).  Where there exists a well-established right at state common law to fee shifting, an award of fees under the common law may be considered for purposes of the amount in controversy.  <u>Smith v. GTE Corp.</u>, 236 F.3d 1292 (11th Cir. 2001).

by state statute, McGraw's argument is without merit and the right to fees created by W. Va. Code § 46A-5-104 may be considered for purpose of meeting the amount in controversy threshold under 28 U.S.C. § 1332(a).

Discover relies on Bostic, where attorney fees were awarded in the amount of $72,500, for its contention that attorney fees alone in a consumer action may approach the requisite jurisdictional amount.  87 F. Supp. 2d at 620.  Unlike this action, Bostic involved a more substantial claim based upon a defendant lender's conduct in making an extension of credit of some $30,000 to the Bostics, secured by their home.  Id. at 612.  The parties settled the Bostic case by, inter alia, cancelling the $30,000 loan and plaintiffs receiving $21,000 in cash benefits.  Id. at 613.  While the court recognizes the fact that substantial fee awards have been made in consumer actions, the wholesale adoption of Discover's position would make available the federal forum to many of the most trivial of consumer disputes so long as the parties are diverse.  Inasmuch as the hallmark of any attorney fee award is reasonableness, the assessment of the value of an attorney fee award for purposes of the amount in controversy must take into consideration the totality of the circumstances in the action.  Here, the parties

17

would be doing their respective clients a great disservice if a dispute originating over the assessment of a $45 product charge and a consequent $35 overlimit fee resulted in either party generating attorney fees at the level suggested as a possibility by Discover.  In the court's view, a more reasonable preliminary estimate of a plaintiff's attorney fees for a case of this nature, including trial on the merits, would not exceed $25,000.[9]

      F.   <u>Summary of Damages.</u>

Having reviewed the representations of the parties, the court concludes that this dispute originating over the assessment of $45 and $35 charges does not merit federal retention.  Rather, this action is seen to be one that the amount in controversy threshold of 28 U.S.C. § 1332 has directed to remain in the state courts even though the parties are of diverse citizenship.  While the vagueness in McGraw's requests for relief, principally that concerning the precise number of violations for which he seeks the imposition of civil penalties under W. Va. Code § 46A-5-101, may have contributed to the removal, the fact remains that even

---

[9]The parties expend considerable effort concerning the holding in <u>McCoy</u> that a plaintiff wishing to avoid removal should submit a binding, pre-removal stipulation to assure the amount in controversy is $75,000 or less.  Inasmuch as Discover has not shown that the amount in controversy is more likely than not in excess of $75,000, the court does not reach this argument.

if completely successful he can reasonably expect less than $1,000 in compensatory damages, $2,220 to $22,200 in civil penalties, $10,000 or less in punitive damages, and reasonable attorney fees of no more than $25,000. At best, McGraw is seeking a maximum of $58,200. Given the nature of the dispute and the monetary amounts involved, this figure is quite likely overly generous. The court is accordingly unable to find that Discover has shown the amount in controversy to be more likely than not in excess of $75,000.

## IV.

For the reasons set forth, it is accordingly ORDERED that:

1. McGraw's motion to remand be, and it hereby is, granted; and

2. The parties shall bear their own costs and expenses in connection with the motion to remand, the notice of removal and the proceedings in this court.

The Clerk is directed to forward copies of this written opinion to all counsel of record.

DATED: July 26, 2005

John T. Copenhaver, Jr.
United States District Judge